# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-3327

———————

United States of America,

      Appellee,

v.

Lloyd Thomas Patterson,

      Appellant.

\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Northern District of Iowa.
\*
\*   [UNPUBLISHED]
\*

———————

Submitted: March 18, 2011
Filed: June 6, 2011

———————

Before WOLLMAN, MURPHY, and GRUENDER, Circuit Judges.

———————

PER CURIAM.

Lloyd Patterson pleaded guilty to conspiring to steal, receive, and possess goods stolen from interstate shipments. The district court[1] varied upward from the guidelines range and sentenced him to 45 months' imprisonment. He appeals, contending that the district court erred by relying on a misleading statement regarding the amount of property at issue and by failing to explain adequately its decision to vary upward. He also contends that the district court abused its discretion by giving

———————

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

him a substantially greater sentence than two co-conspirators who were equally culpable. We affirm.

Lloyd Patterson worked at McFarland Trucking in Austin, Minnesota, from 2000 to 2007, and his brother James worked there from 1999 to 2007. Lloyd and James both drove routes that took loads from a freezer plant in East Dubuque, Illinois, to locations throughout Illinois and surrounding states. Their loads were primarily fresh and frozen meat products, though they hauled dry goods as well. At times a given load would be short or certain products would be damaged in the loading process. When a load was "shorted" or contained damaged product, the McFarland driver responsible for the delivery would call the dispatcher of Farmland Foods, the original producer, to explain that his load had been shorted or to provide the product numbers of packages that had been damaged. He would then receive a claim number in return. If the damaged product remained fit for consumption, but not for sale, the producer would instruct the driver to take it to a local food pantry or other worthy recipient.

James learned of this practice in 2005 when portions of his load were damaged. He followed the procedure except that, rather than donate the damaged product, he would keep it or give to friends. On other occasions, he sold the damaged product to third parties and kept the profit. James informed Lloyd of what he had done, and Lloyd hit upon the idea that would give rise to the ensuing conspiracy: he and James would fraudulently report that portions of their load had been damaged or "shorted," then sell the undamaged product to third parties. Over the course of the conspiracy, James and Lloyd proceeded to appropriate nearly $190,000 of frozen meat products and other assorted dry goods in this manner.

Lloyd's role entailed filing false reports with the producers whose products he was charged with delivering and unloading goods into a conversion van that James and his wife Patricia used to transport the goods to third-party buyers. On occasion

James and Patricia's minor daughters would help Lloyd transfer products from his semi-trailer to the conversion van. James and Patricia developed a customer base for the products and handled their delivery. Though Lloyd did not sell any of the product himself, he earned a portion of the profits from the illegal sales.

Farmland Foods grew suspicious of the substantial losses it had experienced from the freezer plant in Illinois. In September 2007, it hired an investigator who ferreted out the Pattersons' scheme. James, Lloyd, Patricia, and a number of individuals who routinely bought products from them came under federal investigation. James cooperated with authorities and received a sentence of 27 months' imprisonment. Lloyd waived indictment and pleaded guilty to conspiracy to commit theft by fraud of interstate shipments, in violation of 18 U.S.C. § 371. The district court ordered that a presentence investigative report (PSR) be prepared, the results of which the government contested. It argued that Lloyd was an organizer or leader of criminal activity that involved five or more individuals and therefore should be subject to a four-level enhancement under U.S. Sentencing Guidelines Manual § 3B1.1(a). In support, it called a deputy sheriff who testified that in 2006 approximately $33,000 of stolen goods came from Lloyd's loads and approximately $11,000 from James's loads. The government also argued that Lloyd should be subject to a two-level enhancement under § 3B1.4 of the Guidelines because he enlisted minors—James and Patricia's daughters—to assist him in unloading appropriated goods from his trailer.

The district court did not impose the government's proposed enhancements, but noted that evidence marshaled in support of the government's position "will be taken into consideration in other adjustments during the course of this proceeding." Sent. Tr. at 45-46. The district court ultimately concluded that Lloyd had a total offense level of 18 and criminal history category of I, resulting in an advisory guidelines range of 27 to 33 months' imprisonment. The government contended that an upward variance was justified in light of Lloyd's intransigence over the course of the

investigation, his use of minors in unloading stolen products, and his role in formulating the scheme in the first place. It also asserted that Lloyd had made no effort to pay restitution up to that point and had a history of violence and domestic abuse that was under-represented in the guidelines calculation. Lloyd's counsel countered that Lloyd had played a limited role in the conspiracy and should not be subject to a penalty greater than what James had received.

As recounted earlier, the district court varied upward from the guidelines range and imposed a sentence of 45 months' imprisonment. It emphasized evidence showing that the conspiracy began as Lloyd's idea and evidence that he had involved minor children and profited from their labor. It also concluded that the upward variance was appropriate because more product was stolen from his truck than from his brother's and because he had made no restitution prior to sentencing.

We review sentences for abuse of discretion. United States v. Zastrow, 534 F.3d 854, 855 (8th Cir. 2008). We undertake a two-part inquiry. First, we ensure that the district court "did not commit significant procedural error, such as miscalculating the Guidelines range, treating the Guidelines as mandatory, failing to consider § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain why a sentence was chosen." Id. (citation omitted). If the decision is procedurally sound, we next consider the substantive reasonableness of the sentence imposed. Id.

Lloyd claims that the district court committed procedural error by relying on what Lloyd characterizes as "misleading facts" to support its upward variance and by failing to explain adequately the basis for its variance. He refers to the deputy sheriff's testimony to the effect that product stolen from Lloyd's loads exceeded product stolen from James's loads by a ratio of three to one. Though an earlier question makes clear that the witness was referring to 2006, not the duration of the conspiracy, Lloyd maintains that the district court understood that the three-to-one

ratio applied for the conspiracy as a whole and contends that the district court relied on this erroneous "fact" in sentencing. There is no evidence supporting Lloyd's theory that the district court relied on the three-to-one ratio when conducting its sentencing analysis. The district court commented that "more meat was stolen from [Lloyd's] loads than from Mr. James Patterson's loads." Sent. Tr. at 69. As Lloyd himself concedes, this comment states an undisputed fact: more than $100,000 of product was stolen from his loads, compared to roughly $73,000 from James's loads. Accordingly, we find meritless Lloyd's claim that the district court relied on misleading facts.

The assertion that the district court inadequately explained the basis for its upward variance likewise fails. Though the district court declined to adopt the government's guidelines enhancements regarding Lloyd's leadership role and his choice to involve minors in unloading stolen goods, it commented that it intended to account for both factors of Lloyd's offense conduct when determining its final sentence. The court thereafter stressed both factors in explaining its sentence and also emphasized that Lloyd had initiated the scheme and had failed to pay any restitution. The district court thus considered the relevant § 3553(a) factors and provided "ample explanation of its rationale for the sentence imposed." United States v. Hill, 552 F.3d 686, 691 (8th Cir. 2009). Accordingly, it did not commit procedural error in imposing the sentence.

Lloyd also claims that the district court abused its discretion by imposing a sentence substantially greater than that imposed upon his co-conspirators. In cases where the sentence falls outside the guidelines range, we must "give due deference to the district court's decision that the 3553(a) factors, on the whole, justify the extent of the variance." United States v. Gall, 552 U.S. 38, 51 (2007). That we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." Id.

Lloyd maintains that he and James were equally culpable members of the conspiracy and that he should receive a sentence no greater than the 27 months that James received. He stresses that it was originally James who began selling damaged goods to third parties; that the meat products were unloaded and stored on James's property; that James and Patricia found the customers and delivered the goods; and that he did not profit nearly as much as James and Patricia did.

We have previously held that "it is not an abuse of discretion for a district court to impose a sentence that results in a disparity between co-defendants when there are 'legitimate distinctions' between the co-defendants." United States v. Davis-Bey, 605 F.3d 479, 483 (8th Cir. 2010) (quotation omitted). Lloyd claims that no legitimate distinctions exist between himself and his brother James and that the upward variance he received is therefore substantively unreasonable. We disagree. The record indicates that the scheme originated with Lloyd, that more meat was stolen from his loads than his brother's, that he did not cooperate with authorities nor apologize to the companies from which he stole (as did James), and that he failed to pay restitution prior to the sentencing hearing.

The district court presided over the sentencing of co-conspirators James and Patricia Patterson, as well as the trial of a co-conspirator who had made numerous purchases of stolen goods from them. It made explicit reference to the facts that James had cooperated "extensively" and had done so "from very early on" in the investigation. Sent. Tr. at 50. The difference in the extent of cooperation, as well as the amount of meat taken from the brothers' respective loads, are legitimate grounds of distinction that could reasonably justify disparate sentences. Accordingly, we conclude that the district court did not abuse its discretion in varying upward when sentencing Lloyd and that its sentence was substantively reasonable.[2]

---

[2]We have considered Lloyd's pro se motion and conclude that it presents no issue relevant to this appeal.

The sentence is affirmed.

_____